[Cite as *In re C.H.*, 2016-Ohio-5202.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: C.H. | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. John W. Wise, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2016CA00081 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of Common Pleas, Juvenile Division, Case No. 2015JCV00183

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     August 1, 2016

APPEARANCES:

QUAY COMPTON
ATTORNEY FOR SCDJFS
300 Market Avenue N.
Canton, OH 33702

AARON KOVALCHIK
116 Cleveland Avenue N.W.
Suite 808
Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant-mother Patricia Darius ["Mother"] appeals the March 23, 2016 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights with respect to her minor child, C.H. (b. Nov. 11, 2004) and granted permanent custody of the child to appellee, Stark County Department of Jobs and Family Services (hereinafter "SCJFS").

*Facts and Procedural History*

{¶2} On February 23, 2015, SCJFS filed a complaint alleging the dependency and/or neglect of C.H. On May 12, 2015, the trial court found C.H. to be a dependent child and placed him into the temporary custody of SCJFS.

{¶3} On January 5, 2016, SCJFS filed a motion seeking permanent custody of the child.

*Permanent Custody Trial.*

{¶4} On March 21, 2016, the trial court heard evidence on SCJFS's motion seeking permanent custody of C.H.

{¶5} Prior to the start of the hearing, counsel for Mother made an oral motion to withdraw as counsel on the ground that he had no contact with Mother. Further, counsel informed the Court that Mother had not appeared for the permanent custody trial. The trial court denied counsel's to withdraw as Mother's attorney.

{¶6} Caseworker Amy Craig testified that mother was given a case plan to complete. Ms. Craig testified that Mother was ordered to complete an assessment at Northeast Ohio Behavioral Health, a Quest assessment, and a counseling

assessment. Mother was to follow all recommendations from the assessments. (T. at 7)

{¶7} Ms. Craig testified that Mother completed her parenting assessment. Ms. Craig testified that NEOBH[1] recommended the following: undergo drug and alcohol treatment, work with a twelve-step program, undergo mental health treatment, and if a clean drug screen, complete Goodwill Parenting, and maintain sobriety for nine months. (T. at 8-9).

{¶8} Ms. Craig testified that Mother did not comply with the recommendations from Quest and Quest closed her case for being non-compliant on two occasions. (T. at 7). Ms. Craig testified that Mother re-engaged with services from Quest in March and is on the waiting list for residential treatment. Ms. Craig testified that Mother admitted to her therapist that Mother is still using drugs and is living with a boyfriend who is a heroin addict. (T. at 7-8).

{¶9} Ms. Craig testified that Mother has not provided SCJFS with a clean drug screen. Ms. Craig testified that Mother refused to do a drug screen on February 9, 2016 because she recently used methamphetamines. (T. at 8).

{¶10} Ms. Craig testified that Mother had 15 scheduled visits from August 2015. Ms. Craig testified that Mother only attended six visits, but was often late. Mother's last visit was on January 26, 2016. Ms. Craig testified that Mother left the February visit prior to the start of visitation and C.H. saw her leave. Ms. Craig testified that Mother failed to appear for her March, 2016 visit.

{¶11} Ms. Craig testified that the SCJFS provided Mother with bus passes and referrals for mental health providers. (T. at 14; 17). Mother failed to attempt to engage

---

[1] Northeast Ohio Behavioral Health

in mental health counseling and failed to appear for an appointment in March of 2016. (T. at 9).

{¶12} Upon conclusion of Ms. Craig's testimony, the Permanent Custody hearing proceeded to the best interest portion of the trial.

{¶13} Amy Craig was recalled by SCJFS.

{¶14} Ms. Craig testified that C.H. has no developmental, mental, or physical problems; Ms. Craig testified that C.H. does have some anger towards his parents.

{¶15} Ms. Craig testified that C.H. is placed in a foster home to adopt. Ms. Craig testified that he is bonded to foster parents and feels safe in the home. Ms. Craig testified that he is bonded to another foster child in the home.

{¶16} Ms. Craig testified that C.H. is doing well in school and is involved in a variety of activities.

{¶17} Ms. Craig testified that visits with Mother did not always go well. Ms. Craig testified that Mother would use visitation time to argue with workers and the workers would have to redirect Mother. Ms. Craig testified that Mother was often late.

{¶18} Ms. Craig testified that Mother and C.H. do not have a healthy, positive bond. Ms. Craig testified that C.H. likes Mother, but is disappointed in her behaviors.

{¶19} Ms. Warlop, Guardian ad Litem for the child, also agreed that permanent custody was in C.H.'s best interest. (T. at 46). In her testimony, Ms. Warlop indicated that C.H. both understood what permanent custody was and desired for it to be granted. (T. at 46). She also testified that C.H. had come a long way since being placed in the temporary custody of SCJFS. (T. at 46).

{¶20} On March 23, 2016, the trial court issued its findings of fact granting

permanent custody of C.H. to SCJFS and terminating Mother's parental rights.

*Assignments of Error*

{¶21} Mother raises two assignments of error.

{¶22} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT AT THIS TIME OR WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶23} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

***Burden of Proof***

{¶24} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist.1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

{¶25} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and

convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

### *Standard of Review*

{¶26} The Ohio Supreme Court has delineated our standard of review as follows,

Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. *See Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

{¶27} In *Cross*, the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the

impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself.  Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value.  *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.*  See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478.  (Emphasis added).

### *Requirements for Permanent Custody Awards*

{¶28} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody.  R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶29} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one

or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶30} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**Mother's First Assignment of Error: Parental Placement within a**

**Reasonable Time- R.C. 2151.414(B) (1) (a).**

{¶31}  The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents.  R.C. 2151.414(E).  The statute also indicates that if the court makes a finding under R.C. 2151.414(E) (1) – (15), the court shall determine the children cannot or should not be placed with the parent.  A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors.  The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time.  See *In re: William S.,* 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re: Hurlow*, 4th Dist. No. 98 CA 6, 1998 WL 655414(Sept. 21, 1998); *In re: Butcher*, 4th Dist. No. 1470, 1991 WL 62145(Apr. 10, 1991).

{¶32}  R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents.  Specifically, Section (E) provides, in pertinent part, as follows:

>  (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this

section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.052907.07, 2907.08, 2907.09, 2907.12, 2907.21,2907.22, 2907.23, 2907.252907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12,2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the

child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

(7) The parent has been convicted of or pleaded guilty to one of the following:

* * *

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent

to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

(16) Any other factor the court considers relevant.

{¶33} In this case, the trial court made its permanent custody findings pursuant to R.C. 2151.414(E)(1) and /or (4).

**{¶34}** As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the child, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

**{¶35}** Mother's referral to outpatient drug treatment was closed on two separate occasions for her lack of participation. Mother failed to appear for her initial assessment for residential drug treatment. Mother is still abusing drugs. Mother failed to appear for her mental health assessment and has not initiated Goodwill Parenting. Mother's last visit with C.H. was January 2016. She walked out of the scheduled visitation in view of C.H. in February 2016.

**{¶36}** The evidence did not demonstrate that Mother successfully completed any aspect of her case plan. On that point, the evidence demonstrates that any improvement that Mother has made in his life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that Mother was not able to be a successful parent to this child.

**{¶37}** In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

**{¶38}** Based upon the foregoing, as well as the entire record in this case, the Court properly found the child could not or should not be returned to Mother within a reasonable time. Despite offering numerous services, Mother was unable to mitigate the concerns that led to the child's removal.

**Mother's Second Assignment of Error: The Best Interest of the Child.**

{¶39} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶40} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424(8th Dist. 1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

{¶41} The trial court made findings of fact regarding the child's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy*

*Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073(Nov. 13, 2000), *quoting*

*In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

{¶42} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1981 WL 6321 (Feb. 10, 1982). "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).

{¶43} In the present case, the trial court's decision indicates it considered the best interest factors. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in C.H.'s best interest. The trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to SCJFS. In the case at bar, in addition to the testimony, the trial court considered the report of the GAL.

{¶44} The record makes clear that Mother failed to complete the majority of the case plan provided by SCJFS and failed to meet even the basic needs of the child. As set forth in our *Facts and Procedural History, supra*, Mother failed to remedy the problems that initially caused the removal of the child from the home. Mother was not consistent with her case plan. Very little if anything, has changed with respect to Mother since this case began. She does not understand the problems with her behavior, or her lifestyle.

Mother displays poor judgment and poor coping skills. Mother has been unable to demonstrate any meaningful change in her behavior during the pendency of the case.

**{¶45}** During the best interest portion of the trial, Ms. Craig testified that C.H. is a healthy, developmentally on track child. (T. at 30). C.H. is bonded and extremely attached to his foster family. (T. at 31). C.H. is doing well in school, participating in extracurricular activities, and happy in his foster placement. (T. at 30-31). C.H. is attending counseling to address his anger towards his biological parents. (T. at 31-32). The foster family wants to adopt C.H. (T. at 35).

**{¶46}** Ms. Warlop, Guardian ad Litem for the child, also agreed that permanent custody was in C.H.'s best interest. (T. at 46).

## Conclusion

**{¶47}** For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore the child could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to SCJFS was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶48}** Because the evidence in the record supports the trial court's judgment, we overrule Mother's two assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.

**{¶49}** Mother's first and second assignments of error are overruled.

**{¶50}** The judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, J., concur