[Cite as *In re S.D.*, 2016-Ohio-7057.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| IN RE S.D. | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : | Case No. 2016 CA 00124 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:            Appeal from the Stark County Court of
                                    Common Pleas, Family Court Division,
                                    Case No. 2015 JCV 00262 A

JUDGMENT:                           AFFIRMED

DATE OF JUDGMENT ENTRY:             September 26, 2016

APPEARANCES:

For Mother-Appellant:                        For SCDJFS- Appellee:

JENNIFER A. ROBERTS                          JAMES B. PHILLIPS
401 West Tuscarawas St., Suite 300           300 Market Ave. North
Canton, OH 44702                             Canton, OH 44708

*Delaney, J.*

{¶1}   Mother-Appellant appeals the May 20, 2016 judgment entry of the Stark County Court of Common Pleas, Family Court Division, granting permanent custody of her child, S.D., to Appellee Stark County Department of Job and Family Services ("SCDJFS").

## FACTS AND PROCEDURAL HISTORY

{¶2}   Mother has two children, K.A., born in 2008, and S.D., born on August 27, 2014. K.A. and S.D. have different fathers. Mother has a history with SCDJFS based on her substance abuse. K.A. was in SCDJFS custody and a case plan was developed for Mother. Mother did not complete the case plan. K.A. was removed from Mother's custody and placed with K.A.'s father.

{¶3}   On March 17, 2015, Mother and S.D. were observed at a McDonald's restaurant for several hours. Mother was holding S.D. while Mother fell asleep, almost dropping S.D. The McDonald's employees contacted the police, whom arrested Mother and charged her with child endangering, possession, and resisting arrest. S.D.'s father was incarcerated at the time of Mother's arrest. On the day of Mother's arrest, J.C., the mother of S.D.'s half-sibling, came to help with S.D. J.C. met S.D. shortly after she was born and this was the second contact J.C. had with S.D.

{¶4}   SCDJFS filed a complaint alleging dependency and neglect of S.D. on March 18, 2015. An emergency shelter care hearing was held where the trial court found probable cause existed and ordered the child in the emergency temporary custody of SCDJFS.

{¶5}   On June 4, 2015, the trial court found S.D. to be a dependent child. S.D. continued in the temporary custody of SCDJFS. The trial court also approved and adopted a case plan for Mother. S.D. was placed in a foster home in March 2015, but she was moved to a foster-to-adopt home in November 2015.

{¶6}   Mother was released from the Stark County Jail in April 2015. Mother had visitation with S.D. in April, May and June. Mother began her evaluation at NEOBH per her case plan, but she was violated by her probation officer and sentenced to the Stark County Jail. Mother was released on August 19, 2015 to the Deliverance House. Mother was at Deliverance House for a short time before she absconded to Georgia. While in Georgia, Mother was jailed twice for theft and battery.

{¶7}   SCDJFS filed a motion for permanent custody on February 12, 2016. Mother returned to Stark County in March 2016, but she did not contact SCDJFS until April 2016. Mother tested positive for marijuana. Mother stated she had employment but not a permanent residence. SCDJFS attempted to get Mother back on her case plan. Mother attended one appointment with NEOBH, canceled one appointment, and had another appointment scheduled for June 2016.

{¶8}   On May 9, 2016, Mother filed a motion for change of legal custody. Mother requested that J.C. be granted legal custody of S.D.

{¶9}   The trial court held a trial on the motion for permanent custody and the motion for legal custody. Sue Snyder, ongoing caseworker from SCDJFS testified at the trial. Snyder stated Mother did not successfully complete her case plan. Mother had not visited with S.D. since June 2015, which was more than 90 days. Mother also had an

active arrest warrant on the day of the permanent custody trial for her failure to complete inpatient drug treatment.

{¶10} Snyder testified S.D. had some developmental delays, but the child's delays were greatly improved since the child had been in the current foster home. There was no bond between Mother and S.D., but the foster-to-adopt family had a strong bond with S.D. and desired to adopt the child. The foster family also have another adopted child. This was the second foster home placement for S.D. SCDJFS explored an out-of-state relative placement for S.D., but the relative withdrew their request.

{¶11} Snyder further testified that J.C. contacted her in February 2016 regarding custody of S.D. J.C. and S.D.'s father have a child together. J.C. met S.D. shortly after the child's birth and again when J.C. retrieved the child from Mother on March 17, 2015. J.C. had no other contact with S.D. but S.D.'s half-sibling, who was nine-years-old, wanted to have a relationship with S.D. J.C. was pursuing licensure to be considered for pre-adoptive placement if permanent custody was granted.

{¶12} The Guardian ad Litem recommended that custody of S.D. be granted to SCDJFS. The GAL felt another change in custody for the child would be traumatizing.

{¶13} On May 20, 2016, the trial court issued its judgment entry and findings of fact and conclusions of law. It determined that despite the reasonable case planning and diligent efforts of SCDJFS, Mother failed to remedy the conditions that caused S.D. to be taken into custody. The trial court further found Mother abandoned S.D. As to best interests, the trial court found it was in the best interests of S.D. that permanent custody be granted to SCDJFS.

{¶14} It is from this decision Mother now appeals. Father did not file an appeal.

**ASSIGNMENTS OF ERROR**

{¶15} Mother raises one Assignment of Error:

{¶16} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTEREST OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY."

**ANALYSIS**

{¶17} Mother appeals only the best interest portion of the permanent custody decision. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶18} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re C.H.*, 5th Dist. Stark No. 2016CA00081, 2016-Ohio-5202, ¶ 40 citing *In re Awkal,* 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding

with respect to the other parent. *Id.* The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father. *Id.*

{¶19} The trial court made findings of fact regarding the child's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re C.H.*, 2016-Ohio-5202, ¶ 41 citing *In re Mauzy Children,* 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), quoting *In re Awkal,* 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994).

{¶20} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1981 WL 6321 (Feb. 10, 1982). "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller,* 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).

{¶21} Mother argues the trial court erred by not granting her motion for change of legal custody to J.C. In its findings of fact and conclusions of law, the trial court thoroughly considered the motion for legal custody. The trial court found it inexplicable that SCDJFS knew of the existence of J.C. when it changed S.D.'s foster placement in November 2015,

but did not consider placement with S.D.'s half-sibling in J.C.'s home. J.C. testified she did not contact SCDJFS until February 2016 because she did not have any prior experience with the SCDJFS and she did not understand how the custody process operated. J.C. testified her child was very motivated to have his sibling come to live with his family.

{¶22} The trial court found the testimony of J.C. to be compelling, but considered the best interests of S.D. The trial court stated in its findings of fact as to best interests:

> It was plainly and painfully obvious to the Court that both the foster parents and [J.C.] wish to do what is best for [S.D.]. [S.D.'s half-sibling] is aware of the existence of [S.D.] and wants to have a relationship with [S.D.], but there has not been enough contact for the two to be bonded at this time. That bond would have been possible had the agency diligently sought a family placement when they decided to move [S.D.] in November 2015, but they did not do so, and now [S.D.] is bonded to her foster parents. * * * An extension of temporary custody is not appropriate because there is no reasonable expectation that [S.D.] can be reunified with Mother or Father within the six month extension time. [S.D.] was removed from her Mother, from her aunt and from her first foster home. She has made significant progress in her current home, and, per the Guardian, has gone from an anxious infant to a happy, healthy toddler. The Guardian sees no benefit to moving her yet again, but rather the potential for further trauma. The Court cannot find that a Change in Legal Custody is in [S.D.'s] best interest.

(Findings of Fact and Conclusions of Law, May 20, 2016).

{¶23} Our review of the record shows there is competent and credible evidence to support the trial court's finding it was not in the best interest of S.D. to grant legal custody to J.C. The circumstances of this case support the trial court's determination that it was in the best interests of S.D. that permanent custody be granted to SCDJFS.

{¶24} Mother's sole Assignment of Error is overruled.

## CONCLUSION

{¶25} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.