[Cite as *In re S.G.*, 2016-Ohio-8403.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY

IN RE:

S.G.                                                    CASE NO.  4-16-13

NEGLECTED/DEPENDENT CHILD.

[PATRICK G. – APPELLANT]                    **O P I N I O N**

**Appeal from Defiance County Common Pleas Court**
**Juvenile Division**
**Trial Court No. 31284-2**

**Judgment Affirmed**

**Date of Decision:     December 27, 2016**

APPEARANCES:

*Elizabeth H. Smith* **for Appellant**

*Joy S. O'Donnell* **for Appellee**

**SHAW, P.J.**

{¶1} Father-appellant, Patrick G. ("Patrick"), brings this appeal from the May 27, 2016, judgment of the Defiance County Common Pleas Court, Juvenile Division, granting permanent custody of the minor child S.G. to the Defiance County Department of Job and Family Services ("the Agency"). On appeal, Patrick contends that the trial court erred in denying the motion to intervene filed by his mother, Kimberly Schroeder, and that granting permanent custody to the Agency was not in S.G.'s best interest.

*Relevant Facts and Procedural History*

{¶2} S.G. was born in November of 2012, the daughter of Kimberly Schafer and Patrick. The record indicates that the Agency first became involved with S.G. in January of 2013 when S.G. was approximately 6 weeks old. At that time S.G. was taken to the hospital for a broken arm. A subsequent investigation revealed that S.G. also had a broken leg and three broken ribs, all of which had been caused by Patrick.

{¶3} The Agency removed S.G. from her parents and she was placed with Patrick's sister for "about two days," but when Patrick's sister could not care for S.G., she was placed with Patrick's mother, Kimberly Schroeder ("Schroeder").[1] S.G. was with Schroeder from January 14, 2013, to January 24, 2013.

---

[1] S.G. has two half-siblings. They all share the same mother but Patrick is only the father of S.G. As neither of the other children are subject of this appeal, and are unrelated to Patrick, we will not further address them.

{¶4} On January 24, 2013, Schroeder called the Agency and stated that her companion, Larry, was having back surgery and Schroeder did not think she could take care of both S.G. and Larry without assistance. The Agency then removed S.G. and placed her in a foster home with Celeste and Josh Kenning.

{¶5} As a result of S.G.'s broken arm, broken leg, and three broken ribs, Patrick was charged with, and pled guilty to, two counts of Endangering Children in violation of R.C. 2919.22(A), both felonies of the third degree. Patrick was ordered to serve 36 months in prison on each charge, consecutive to each other, for an aggregate 72-month prison term. Patrick's sentencing entry was filed May 24, 2013, and he was given credit for over 100 days served.

{¶6} Meanwhile, from late January of 2013 through February of 2015, S.G. remained with the Kennings in a foster home. During that time, S.G.'s mother, Kimberly Schafer, worked her case plan with the Agency. In February of 2015, S.G. was returned to Kimberly's legal custody, while the Agency retained protective supervision over S.G. Kimberly continued working with the Agency once S.G. was returned to her and Kimberly's official case was closed in the summer of 2015; however, Kimberly engaged in a voluntary plan with the Agency after her official case was closed.

{¶7} On September 14, 2015, the Agency received information that Kimberly and her new boyfriend were attempting to sell drugs in their apartment

complex. Katie Piwarski, an ongoing caseworker with the Agency, went to Kimberly's residence to investigate the matter. Kimberly and her boyfriend submitted to drug screens at that time. Kimberly tested positive for marijuana and cocaine and her boyfriend tested positive for marijuana.

{¶8} On September 16, 2015, Kimberly's house was searched by Piwarski and a member of the Multi-Area Narcotics ("MAN") Task Force. The search revealed a pill bottle containing marijuana on an old television in the living room. The old television was being used as a stand for a newer television. The pill bottle containing marijuana was within reach of the children in the home. In addition, drug paraphernalia was located in the residence.

{¶9} The same date that the search was conducted, September 16, 2015, the Defiance County Common Pleas Court, Juvenile Division, issued an *ex parte* order granting the Agency emergency custody of S.G.

{¶10} On September 17, 2015, the Agency filed a complaint alleging that S.G. was a neglected and dependent child, contending that she lacked adequate parental care, that Patrick was incarcerated, that Kimberly had tested positive for drugs, that Kimberly was being evicted, and that marijuana was found in Kimberly's home within reach of the children residing there, including S.G.

{¶11} On September 17, 2015, a hearing was held on the previously issued ex-parte temporary custody order wherein Piwarski provided an overview of the

case history, leading to the current issues. Kimberly was present at the hearing and she made a statement that she was being evicted from her apartment, that she had no place to stay, that she was moving to Minnesota and that she wanted to give up her parental rights. Based on the evidence presented at the hearing, the trial court determined that probable cause existed to believe that S.G. was a neglected and or dependent child in need of immediate protection and services and that her needs could not be guaranteed in her present situation with Kimberly or Patrick, since he was incarcerated.

{¶12} On September 24, 2015, the trial court held an initial hearing on the complaint alleging that S.G. was a dependent and neglected child. Before the hearing began, the trial court addressed Schroeder, Patrick's mother, who was in attendance. The trial court informed Schroeder that even though she had power of attorney for her incarcerated son, in order to participate in this case as a party she had to file a motion to intervene. The trial court explained what Schroeder had to do and advised Schroeder to get an attorney if she wanted to intervene in this case. During the hearing itself, Kimberly Schafer was present, and she reiterated that she would be leaving soon to move to Minnesota.

{¶13} On September 25, 2015, Clay Crates was appointed as Guardian ad Litem ("GAL") for S.G. He had previously been the GAL for S.G. during the initial case with the Agency.

{¶14} According to the record, another hearing was held October 29, 2015. At that time the trial court was informed that S.G.'s mother, Kimberly Schafer had relocated as she had planned to Savage, Minnesota.

{¶15} On December 15, 2015, the Agency filed a motion to amend its complaint, seeking permanent custody of S.G. pursuant to R.C. 2151.353(A)(4). The Agency filed the amended complaint that same day.

{¶16} On January 28, 2016, an adjudication hearing was held on the dependency and neglect allegations. It was reiterated at that time that Kimberly was living in Minnesota and that Patrick was incarcerated. Piwarski then gave testimony related to the incidents giving rise to the dependency and neglect allegations. Piwarski also testified that Patrick's mother, Schroeder, had been looked at as a possible relative placement. Piwarski testified that Schroeder's financial situation precluded Schroeder from being a possible placement option. In addition, Piwarski testified that Schroeder had called the Agency in 2013 after only 10 days of having S.G. at the inception of the first case and stated that she needed assistance.

{¶17} Next, officer Aaron Gisige of the MAN Task Force provided testimony related to the search of Kimberly's residence on September 16, 2015. After the evidence was presented, the GAL argued that he found it "disturbing" that Kimberly tested positive for marijuana and cocaine on September 14, 2015, and

would not even bother to clean up the drugs and drug paraphernalia around her house by two days later when the search was conducted. (Jan. 28, 2016, Tr. at 62.).

{¶18} Based on the evidence presented at the adjudication hearing the trial court found that clear and convincing evidence had been presented that S.G. was a dependent and neglected child. No parties objected to S.G. remaining in the Agency's temporary custody pending further disposition. An entry summarizing the evidence presented and making the appropriate findings of neglect and dependency was filed February 5, 2016.

{¶19} On February 19, 2016, a case plan was filed. The case plan indicated that Kimberly had told the Agency that she wanted S.G. to remain with Celeste and Josh Kenning, her foster parents.

{¶20} On February 24, 2016, Patrick sent a letter to the trial court from prison requesting that S.G. be placed with his mother, Schroeder. While this case was pending, Schroeder was permitted a monthly visit with S.G. at the Agency for an hour. However, Celeste Kenning facilitated additional time for Schroeder to see S.G. when it was feasible.

{¶21} On April 26, 2016, the GAL filed a report. As it pertained to the Agency's request for permanent custody of S.G., the GAL recommended that permanent custody be denied, stating that visitation should be increased with

Schroeder and it should be investigated whether Schroeder could be a proper placement for S.G.

{¶22} On May 2, 2016, Schroeder, proceeding *pro se*, filed a motion to intervene in this case, which requested that she be named the residential parent and legal custodian of S.G. Schroeder asserted that she had the capability of caring for S.G. (Doc. No. 48).

{¶23} On May 3, 2016, the State filed a memorandum in opposition to Schroeder's motion to intervene, stating that the motion was filed too late as the permanent custody hearing was scheduled to commence the next day.

{¶24} On May 4, 2016, the trial court filed an entry denying Schroeder's *pro se* motion. In its entry, the court noted that the matter was originally set for disposition on March 15, 2016, but was continued at Patrick's attorney's request and despite this, the motion to intervene was filed 2 days prior to final disposition. The trial court thus concluded that the motion to intervene was not timely filed under Civ.R. 24.

{¶25} On May 4, 2016, and May 6, 2016, the dispositional hearing was held. Kimberly was not present, though her attorney was, and he expressed his belief, on behalf of Kimberly, that the Agency's permanent custody motion should be granted. Patrick was also not present, as he was still incarcerated for his crimes related to breaking S.G.'s bones. However, Patrick's attorney argued that the trial court

should have granted Schroeder's motion to intervene, and, in any event, the trial court should deny the Agency's request for permanent custody and increase Schroeder's visitation with S.G.

**{¶26}** Although there were a number of witnesses presented at the final hearing, much of the testimony presented pertained to whether Schroeder would have made a reasonable alternative for placement.

**{¶27}** Katie Piwarski was the first witness to testify at the hearing. She reiterated the case history from the inception of the Agency's involvement with S.G. through the current case.

**{¶28}** As it related to Schroeder, Piwarski testified that the Agency looked into placement with Schroeder. Piwarski testified that Schroeder was initially used as a "safety placement" under a voluntary agreement with Kimberly and Patrick when S.G. was first discovered to have multiple broken bones in 2013. (May 4, 2016, Tr. at 54). Piwarski testified that S.G. was with Schroeder for approximately 10 days in January of 2013 when Schroeder contacted the agency. At that time, S.G. was removed from Schroeder's home and placed into foster care with the Kennings.

**{¶29}** Piwarski testified that during the pendency of the case Schroeder had asked that S.G. be placed with her four times; however, Piwarski testified that Schroeder indicated that she would need financial help. Piwarski's later testimony

furthered this point as she testified that Schroeder was investigated as a possible placement but the investigation proceeded no further when it was determined that Schroeder could not financially support a child.

{¶30} Piwarski testified that Schroeder, who was 47 at the time of the hearing, had no job and no income. Schroeder lived with her companion, Larry, who received SSI/disability in the amount of $861 per month after his child support obligation was taken out. Piwarski testified that Schroeder's financials showed that she had no savings, that she had overdue bills, and that Schroeder's bank account was overdrafted on multiple occasions.

{¶31} Conversely, Piwarski testified that S.G. was doing very well with her foster family, the Kennings. Piwarski testified that S.G. had spent approximately 2 years with the Kennings from 2013 to 2015, and had been with the Kennings from September of 2015 to the hearing in May of 2016. Piwarski testified that S.G. had bonded with the Kennings, that the Kennings desired to adopt S.G., and that S.G. even called Celeste and Josh "mom" and "dad."

{¶32} Piwarski testified that the Kennings had actually facilitated extra visiting time for Schroeder outside of the Agency. Piwarski testified that the Kennings also maintained contact over the years with Kimberly, S.G.'s mother, sharing pictures and information related to S.G.

{¶33} Piwarski testified that there were many things considered as to whether a relative could be an appropriate placement, but when Schroeder did not even meet the financial qualifications, the Agency proceeded no further in evaluating Schroeder. Nevertheless, Piwarksi did testify that Schroeder had a "substantiated" medical neglect case in 2008 regarding her son Patrick.

{¶34} Ultimately Piwarski testified that S.G. could not be reunited with her mother, who wanted the Kennings to have custody of S.G., and that S.G. could not be reunited with her father, who was in prison. Piwarski testified that S.G. was in need of permanency and that she believed it was in S.G.'s best interests for permanent custody to be granted to the Agency.

{¶35} At the conclusion of Piwarski's testimony, the hearing was continued to a second day. On the second day of the hearing, Hillary Conley, an ongoing caseworker and former investigator for the Agency, testified that she had originally investigated Schroeder's house and found it suitable for a safety placement in 2013. However, Conley testified she was unsure why the Agency determined it was suitable at that time given the substantiated medical neglect against Schroeder.

{¶36} As to what happened in 2013 related to Schroeder, Conley testified that she received a call from Schroeder in January of 2013 after S.G. was with Schroeder only 10 days wherein Schroeder stated that she could not take care of S.G. Conley testified that she called and asked other family members if they were

willing and able to care for S.G. and when they said no, the Agency filed an ex parte motion for temporary custody, which resulted in S.G. being placed with the Kennings.

{¶37} Celeste Kenning, S.G.'s foster mother, was the next witness to testify at the hearing. Kenning's testimony reaffirmed that S.G. had been in her home for roughly 31 of the 39 months preceding the hearing.[2] Kenning testified that S.G. was doing well in her home, that S.G. was like a daughter to her, that Kenning treated S.G. like a daughter and that S.G. called her "mom." Kenning testified that she was willing to adopt S.G. should she become available for adoption.

{¶38} Kenning also testified that she still facilitated contact between S.G. and her mother, Kimberly, via skype and phone calls, even as recently as the day before the hearing. Kenning testified that she facilitated extra contact with Schroeder as well.

{¶39} Kenning testified that she had some concerns with Schroeder as Schroeder had transportation difficulties and Schroeder had made comments regarding her belief that Patrick was innocent of his crimes against S.G., despite his admission to the crimes.

{¶40} Clay Crates, the GAL, was the next witness to testify. He testified that he felt the foster parents were very appropriate with S.G. and that they were willing

---

[2] Arguably the amount is 33 out of 39 months if partial months are taken into consideration.

to adopt S.G. Crates testified that he had no contact with Schroeder from 2013 to 2015 during the pendency of the initial case. Crates testified that at some point he learned of Schroeder's desire for legal custody. Crates testified that he never discussed his thoughts that visitation with Schroeder should be increased with the Agency.

{¶41} Further, Crates admitted his knowledge that Schroeder was unemployed and his knowledge that the Agency had never denied Schroeder visitation. He stated that through his investigation of the case he was aware that Schroeder and her companion were smokers, that the house smelled like smoke and that they shared a vehicle. Nevertheless, Crates reiterated his written recommendation that permanent custody be denied and he stated that he thought the Agency needed to determine whether Schroeder was a possible appropriate placement, despite being told by the Agency that Schroeder was investigated for placement and that she was not capable financially of supporting another household member.

{¶42} The Agency rested its case at that point. No witnesses were called on behalf of S.G.'s mother, and her attorney reiterated that he believed permanent custody to the Agency was in S.G.'s best interest.

{¶43} Patrick's attorney then presented his case-in-chief, first calling Kim Jackson of the Agency. Jackson testified that she supervised visitations and she had

monitored Schroeder's visits with S.G. Jackson testified that she never saw any negative issues in Schroeder's interaction with S.G.

**{¶44}** Patrick's attorney then called Schroeder. Schroeder testified that she lived in a duplex with her companion, Larry. Schroeder testified that she had no job even though there was no reason she could not work. Specifically, Schroeder testified, "no I don't have any money," and that she was completely dependent on Larry. Schroeder testified that she simply did not need a job as she and Larry could live off of his SSI/disability and food stamps. When asked why she did not go back to work and get a job when she was told her finances were not enough to support S.G. in the home, Schroeder testified that she did not need to at that time.

**{¶45}** Schroeder testified that in 2013 when S.G. was in her home, she was merely seeking assistance when she called the Agency, not stating that she could not care for S.G. Schroeder testified that she was upset that S.G. was taken from her home.

**{¶46}** Schroeder testified that despite Patrick's guilty pleas, she thought that Kimberly was at least partially responsible for S.G.'s injuries as an infant. Schroeder also testified that she was a smoker and that she had a criminal history that included an Unauthorized Use of a Vehicle, for which she spent 56 days in jail, and a Disorderly Conduct. Schroeder testified that Larry also had a criminal history

with multiple "DUIs." Schroeder testified that Larry never came to her visitations with S.G.

**{¶47}** As to the incident of substantiated medical neglect related to Patrick, Schroeder testified that her son was ordered to a mental hospital and she objected to which hospital he was going to. She testified that contrary to what was stated, she was not trying to prevent Patrick from getting treatment altogether.

**{¶48}** At the conclusion of the hearing, the parties submitted written proposed findings of fact and conclusions of law.

**{¶49}** On May 27, 2016, the trial court issued its final judgment entry on the matter. In its entry, the trial court reiterated the case history and made 36 enumerated factual and legal findings. Ultimately the trial court found that S.G. had been in the temporary custody of the Agency for 12 or more of the previous 22 months, that she could not and should not be placed with either of her parents, and that it was in her best interest that the Agency be granted permanent custody.

**{¶50}** It is from this judgment that Patrick appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**IN AN ABUSE OF DISCRETION, THE TRIAL COURT DEPRIVED PATRICK [G.] OF DUE PROCESS WHEN IT ERRONEOUSLY DENIED KIMBERLY SCHROEDER'S MOTION TO INTERVENE AND REQUEST FOR CUSTODY OF S.G.**

**ASSIGNMENT OF ERROR 2**
**THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE AGENCY FAILED TO PROVE, BY CLEAR AND CONVINCING EVIDENCE, THAT THE BEST INTEREST OF THE [CHILD] REQUIRES AN AWARD OF PERMANENT CUSTODY WHERE A SUITABLE FAMILY MEMBER IS READY, WILLING, AND ABLE TO ACCEPT LEGAL CUSTODY OF THE CHILD.**

*First Assignment of Error*

{¶51} In Patrick's first assignment of error, he argues that the trial court erred by denying the motion to intervene filed by his mother, Schroeder. Specifically, he argues that the trial court abused its discretion by denying Schroeder the opportunity to intervene and call witnesses on her own behalf and that the denial of the motion was largely unsupported.

{¶52} By contrast, the State argues that Patrick has limited standing to challenge the issue of the trial court denying *his mother's* motion to intervene. The State contends that Patrick can only challenge the trial court's decision related to Schroeder inasmuch as it impacted *his* rights, not the rights of his relative. *In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208. "A parent has no standing to assert that the court abused its discretion by failing to give the [paternal grandmother] legal custody; rather, the challenge is limited to whether the court's decision to terminate parental rights was proper." *Pittman* at ¶ 70.

**{¶53}** To the extent that the denial of the motion to intervene impacted *Patrick's* parental rights, we review the trial court's decision to deny a motion to intervene under an abuse of discretion standard. *See In re Schmidt*, 25 Ohio St.3d 331, 337 (1986). An abuse of discretion constitutes a decision that is arbitrary, capricious, or grossly unsound. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

**{¶54}** Civil Rule 24 governs intervention in cases and reads, in pertinent part, as follows.

**(A) Intervention of right**

**Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.**

**(B) Permissive intervention**

**Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.**

**{¶55}** The Supreme Court of Ohio has definitively stated that grandparents have "no *legal interest* in the care and custody of their [grandchild], which would [allow] them to intervene as of right pursuant to Civ.R. 24(A)." (Emphasis *sic*). *In re Schmidt*, 25 Ohio St.3d 331, 336 (1986). The *Schmidt* Court further determined that grandparents' "desire for custody or visitation cannot be construed as a legal right to custody or visitation," as their "concern for their grand[child]'s welfare cannot be construed as a legal interest that falls within the scope of Civ.R. 24(A)." *Id; see also In re Young*, 5th Dist. Stark No. 2008CA00134, 2008-Ohio-5435, ¶ 15.

**{¶56}** The Supreme Court of Ohio's clear statement in *Schmidt* indicates that Schroeder could not intervene as of right in this case under Civ.R. 24(A). Thus we must determine whether the trial court abused its discretion in denying Schroeder to permissively intervene pursuant to Civ.R. 24(B).

**{¶57}** In this case, Schroeder was clearly aware of S.G.'s circumstances throughout S.G.'s involvement with the Agency given that S.G. was placed with Schroeder in early 2013 for ten days until Schroeder indicated she could not handle the situation without assistance. Schroeder was also clearly aware of the new case involving S.G. in September of 2015, basically from its inception, as Schroeder actually attended the beginning of an initial hearing on the matter on September 24, 2015.

{¶58} At the September 24, 2015, hearing, Schroeder was specifically told by the trial court that she was not a party to this matter even though she had power of attorney for her son Patrick. Schroeder was *explicitly informed* at that time, over 7 months prior to the final hearing, that if she wanted to be part of the proceedings she had to file a motion to intervene. The trial court specifically took the time at the hearing to explain to Schroeder that if she wanted to intervene she should get an attorney and that was the only way she could *potentially* participate in this matter as a party.

{¶59} Notwithstanding the trial court's clear message to Schroeder, Schroeder waited until two days before the final hearing to file her *pro se* motion to intervene in this matter. The Agency opposed the motion.

{¶60} The trial court overruled Schroeder's motion in a written entry, stating that the final hearing had actually been scheduled for March 15, 2016, and was only continued at Patrick's attorney's request. The trial court stated that filing the motion to intervene two days before the final hearing was not timely under either paragraph (A) or (B) of Civ.R. 24.

{¶61} We can find no abuse of discretion with the trial court decision on this issue. If Schroeder wanted to intervene in the matter she could have started the proceedings immediately as she was absolutely aware of the pending case. In fact,

she was conducting at least semi-regular visitations with S.G., so she was not oblivious to the ongoing court case and S.G.'s status.

{¶62} Nevertheless, even if Schroeder *did* file her motion earlier, we could still find that the trial court did not abuse its discretion in denying Schroeder's motion to intervene. The record does not indicate that Schroeder ever stood *in loco parentis* of S.G. outside of the 10 days S.G. was placed with her. Schroeder's only involvement with S.G. was facilitated through the Agency, or through S.G.'s foster parents. *See In re Stanley*, 9th Dist. Summit No. 20128, 2000 WL 1507917 ("notwithstanding the interest of relatives in the disposition of custody of a minor child, the trial court acts within its sound discretion in refusing to join such relatives as parties, where there is no showing that the relatives stood *in loco parentis* to the child."); *see also In re E.C.*, 8th Dist. Cuyahoga No. 103968, 2016-Ohio-4870, ¶ 20. Thus even if Schroeder's motion was more timely, we would find that the trial court did not abuse its discretion in denying the motion. Accordingly, Patrick's first assignment of error is overruled.

### *Second Assignment of Error*

{¶63} In Patrick's second assignment of error, he argues that the trial court's decision granting permanent custody of S.G. to the Agency was against the weight of the evidence. Specifically, Patrick argues that Schroeder was able to show that she was a willing and suitable blood relative for the placement of S.G., that the GAL

recommended against granting the Agency permanent custody so that the Agency could further investigate whether Schroeder would be a proper placement, and that the trial court failed to specify why it disagreed with the GAL.

*Standard of Review*

**{¶64}** When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶65}** In a permanent custody case, the ultimate question for a reviewing court is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008–Ohio–4825, ¶ 43. "Clear and convincing evidence" is: "[T]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in

-21-

criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, (1986).

**{¶66}** In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *accord In re Holcomb*, 18 Ohio St.3d 361, 368 (1985), citing *Cross v. Ledford*, 161 Ohio St. 469 (1954). "Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *In re R.M., M.M., D.M., B.M.*, 4th Dist. Athens Nos. 12CA43, 12CA44, 2013-Ohio-3588, ¶ 55.

**{¶67}** "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record." *In re S.D.*, 5th Dist. No. 2016CA00124, 2016-Ohio-7057, ¶ 20, citing *Miller v. Miller*, 37 Ohio St.3d 71 (1988). A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Thompkins* at 387, quoting Martin at 175.

*Best Interests Analysis*

**{¶68}** Revised Code 2151.414 provides a two-part analysis for courts to apply when determining a motion for permanent custody. The Agency must prove by clear and convincing evidence that, (1) granting permanent custody of the child to the agency is in the best interest of the child, and that (2) the child either (a) cannot be placed with either parent within a reasonable period of time for one of the statutorily enumerated reasons, which includes, *inter alia*, that the child has been in the temporary custody of the Agency for twelve or more months out of a consecutive twenty-two month period, or that (b) the child should not be placed with either parent within a reasonable period of time.

**{¶69}** In this case, Patrick concedes that the trial court made the proper and appropriate finding that S.G. could not be placed with either parent within a reasonable time as "Patrick * * * is incarcerated for offenses against the child and * * * Kimberly * * * has abandoned S.G. by moving out of state." (Appt.'s Br. at 7).

**{¶70}** What Patrick does argue on appeal is that the trial court erred by determining that awarding permanent custody of S.G. to the Agency was in S.G.'s best interest. When determining the best interest of the child related to permanent custody a trial court is required to consider the factors in R.C. 2151.414(D)(1), which reads,

> **(a)  The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-**

**home providers, and any other person who may significantly affect the child;**

**(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**

**(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;**

**(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**

**(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.**

**{¶71}** In its entry on the matter, the trial court stated that it had considered all relevant factors under R.C. 2151.414(D)(1) in making its best interest determination in this case. We will review the relevant testimony related to each factor.

**{¶72}** As it relates to factor (D)(1)(a), the trial court was presented with testimony that S.G. was doing well with her foster family, that her foster family wanted to adopt her, and that S.G. was essentially part of the foster family.

{¶73} S.G.'s mother, though she stayed in contact with S.G., had moved out of state and expressed her desire that the Agency be granted permanent custody of S.G. She wanted S.G.'s foster parents to have custody of S.G. She was adamantly against Schroeder as a placement option.

{¶74} Patrick was incarcerated for his crimes against S.G., and had no real relationship with her.

{¶75} Schroeder met with S.G. monthly for an hour at the Agency—or more, if facilitated by the Kennings—and by all accounts had a good relationship with her.

{¶76} As it relates to factor (D)(1)(b), S.G. was too young to express her own wishes, so the GAL spoke on her behalf, recommending that permanent custody be denied. Notably, the GAL did not recommend that Schroeder be granted legal custody; rather, he recommended that visitation be increased with Schroeder and that the Agency investigate whether Schroeder was a suitable placement option for S.G., which would prolong S.G.'s indeterminate status even longer.

{¶77} Strangely, the GAL seems to ignore the fact that the Agency had already investigated Schroeder and found that she could not handle another household member financially. The GAL even testified that he was informed of this fact. The GAL also seemed to place no emphasis on the fact that Schroeder had S.G. in her care and could only manage it for ten days without seeking assistance.

Further, the GAL seemed to place no emphasis on Schroeder's criminal history or her substantiated medical neglect against Patrick.

**{¶78}** As it relates to factor (D)(1)(c), S.G. had been in the custody of her foster family for nearly her entire life.

**{¶79}** As it relates to factor (D)(1)(d), S.G. had been in and out of the Agency's care for over three years, almost her entire life. She was in need of permanency.

**{¶80}** As it relates to factor (D)(1)(e), and the considerations referenced therein, Patrick was convicted of two counts of Endangering Children, specifically for breaking no less than five bones of this particular child, which weighs against him under factor (E)(7)(c). Patrick was also incarcerated, which weighed against him under factor (E)(12).

**{¶81}** With that summary of the factors in mind, we turn to Patrick's arguments related to best interests on appeal. Notably, Patrick makes essentially no arguments on his own behalf that granting the permanent custody motion was against the weight of the evidence; rather, his brief is dedicated to painting Schroeder as an acceptable candidate for alternative placement. Patrick thus contends that factor (D)(1)(b), and the GAL's recommendation, should outweigh all other factors in this case.

**{¶82}** It is important to recognize that a trial court is not bound by the recommendation of the GAL. *In re M.Z.*, 9th Dist. Lorain No. 11CA010104, 2012-Ohio-3194, ¶ 35. Furthermore, courts have consistently held that, "The willingness of a relative to care for the child does not alter what a court considers in determining permanent custody." *In re P.S.*, 5th Dist. Licking No. 16-CA-11, 2016-Ohio-3489, ¶ 57, citing *In re Patterson*, 134 Ohio App.3d 119, 129, 730 N.E.2d 439, 447 (9th Dist.1999); *In re J.T.*, 8th Dist. Cuyahoga Nos. 93240, 93241, 2009-Ohio-6224, ¶ 58; *see In re Haller*, Wyandot No. 16-08-16, 2009-Ohio-545, ¶ 34; *In re D.K.W.*, Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 34. "Accordingly, a court is not required to consider placing a child with a relative prior to granting permanent custody to an agency." *In re P.S.* at ¶ 57.

**{¶83}** When considering the evidence and testimony in this case, we find that the evidence supports the trial court's decision. Looking at the evidence related to the parents of S.G. specifically, the trial court's decision was clearly supported in the record due to S.G.'s mother's abandonment and Patrick's lengthy incarceration for his crimes related to S.G.

**{¶84}** Patrick requests that this Court ignore all the evidence related to the parents and focus on the one factor related to the GAL's recommendation, even though the GAL's recommendation itself ignores significant facts in the record that

he was aware of. As the evidence supports the court's decision, we do not find Patrick's argument well-taken.

*Trial Court's Disagreement with the GAL's Recommendation*

**{¶85}** Patrick next argues that the trial court erred by failing to specifically identify why it disagreed with the GAL's recommendation. At the outset, we do not accept Patrick's characterization of the trial court's entry on the matter. The trial court's entry contains all of the following findings that either directly or tangentially relate to Schroeder, and thus the GAL's recommendation that permanent custody should be denied and visitation with Schroeder should be increased.

**11.** **The Agency has looked for relative placements on both sides for [S.G.], to no avail.**

**12. Even though [S.G.] was originally placed with Kim Schroeder under a safety plan, the child only remained in her care for ten (10) days before she requested the child be removed, at which point the Agency removed the child and sought and obtained an *ex parte* temporary custody order.**

**13. Kimberly Schroeder later indicated to Agency representatives that she would take the child back, but needed financial assistance in order to do so. Agency representatives determined that Kimberly Schroeder was not financially able to care for [S.G].**

**14. Agency representatives indicated that Kimberly Schroeder would still qualify under their standards for safety placement of [S.G.], but she would not qualify for a long term relative placement.**

-28-

**15.** **Agency representatives indicated that Kimberly Schroeder was not financially able to provide for the child; that the Agency was concerned that Kimberly Schroeder would allow contact between [S.G.] and Patrick [G.] when he is eventually released from prison; that Kimberly Schroeder has no independent source of income, other than the monies she receives from her live-in boyfriend; and that Kimberly Schroeder had a substantiated medical neglect case according to Agency records regarding her son, Patrick [G.] in 2008.**

**16.** **[S.G.] was placed in foster care with Joshua and Celeste Kenning in January 2013 when Kimberly Schroeder requested [S.G.] be removed from her home.**

**\* \* \***

**27.** **The [GAL] recommended that visitation time with paternal grandmother, Kimberly Schroeder and [S.G.] be increased to determine whether Kimberly Schroeder could be an appropriate placement; however, the [GAL] indicated that he could not say that Kimberly Schroeder would be an appropriate placement at the present time.**

**28.** **Kimberly Schroeder testified that she believes Kimberly Schafer broke [S.G.]'s leg, not her son Patrick [G.], even though Patrick [G.] plead [sic] guilty and was sentence[d] for causing the physical harm to [S.G.].**

**29.** **Kimberly Schroeder testified that she has no money or income, and relies totally upon the disability income received by her live-in boyfriend, Larry.**

**30.** **Kimberly Schroeder testified that if she had custody of [S.G.], it would be up to Larry to support the child since she has no source of income and Larry controls the money in their household.**

(Doc. No. 59).

{¶86} The preceding extensive analysis of the testimony related to Schroeder makes clear that while the trial court might not have said the exact words that it disagreed with the GAL for those specific reasons, the trial court had a number of very specific reasons as to why the GAL's recommendation was not going to be followed in this case.

{¶87} We would even add to the trial court's analysis that the GAL took no initiative in bringing his belief to the Agency that Schroeder's visitation should be increased or that Schroeder should be investigated as possible placement. The GAL seems to repeatedly suggest that the Agency should have evaluated Schroeder for possible placement, but he ignores the fact that the Agency *already had* evaluated Schroeder.

{¶88} Moreover, the GAL gives no credence to the fact that this case had been pending off and on for years and Schroeder was fully capable of working to remedy her financial situation, which disqualified her, yet she chose not to work simply because she did not have to.

{¶89} Finally, similar arguments to Patrick's regarding relative placement have been made and overruled by other Ohio Appellate Courts and we find Patrick's arguments similarly unpersuasive here. *In re P.S.*, 5th Dist. Licking No. 16-CA-11, 2016-Ohio-3489, ¶ 62 (wherein GAL recommended relative placement in permanent custody case but relative's past history was a factor to determine

appropriateness of that issue and trial court ignored GAL's recommendation); *In re Patterson*, 134 Ohio App.3d 119, 730 N.E.2d 439 (9th Dist.1999) (although relative's home was sufficient to care for child, relative unable to provide child necessary level of care).

{¶90} In sum, the trial court's decision is supported by the record and we cannot find that the trial court erred in determining that it was in S.G.'s best interest for the Agency to be awarded permanent custody in this case. Therefore, Patrick's second assignment of error is overruled.

## Conclusion

{¶91} For the foregoing reasons Patrick's assignments of error are overruled and the judgment of the Defiance County Common Pleas Court, Juvenile Division, is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**