[Cite as *In re Al Bani*, 2014-Ohio-5783.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN THE MATTER OF
THE GUARDIANSHIP OF:

USAMAH AL BANI

C.A. No.     27348

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     2013 GA 172

DECISION AND JOURNAL ENTRY

Dated: December 31, 2014

WHITMORE, Judge.

{¶1}  Appellant, Usamah Al Bani, appeals from the judgment of the Summit County Court of Common Pleas, Probate Division, appointing a guardian over his person.  This Court affirms.

I

{¶2}  At the time of the probate court hearing, Al Bani was homeless, 69 years old, wheelchair dependent, and required extensive assistance with his activities of daily living.  Al Bani had spent over 30 years in prison before settling in Akron, Ohio.  According to Al Bani, he suffered two strokes prior to 2011, following which he rehabilitated himself while still in prison.  In addition to his history of strokes, Al Bani has a number of other physical ailments, including hypertension, dysarthria, Crohn's disease, hyperlipidemia, asthma, and chronic anemia.  Al Bani also suffers from depression and psychotic disorder not otherwise specified.  His family is estranged and has not been involved in his care.

{¶3} In April 2012, Al Bani suffered a third stroke that was "more major than the other two." He was initially treated at Akron City Hospital, but left against medical advice. He was unable to care for himself and was re-hospitalized. He was sent to Edwin Shaw Rehab, but again left against medical advice. He also left Summa Villa Nursing Home against medical advice. He was re-hospitalized at Akron General Medical Center. Eventually, he was transferred to Wayside Farm Nursing and Rehabilitation Center ("Wayside Farm").

{¶4} Following Wayside Farm's request that a guardian be appointed, Attorney Barbara Heinzerling applied for a guardianship over the person of Al Bani. The matter proceeded to a hearing before a magistrate. The magistrate considered the statement of expert evaluation submitted by Dr. Loren Pool, the medical director for Wayside Farm, and the report submitted by the probate court investigator. In addition, the magistrate heard testimony from Dottie Pastis, a social worker, Charity Spade, a restorative nurse, and Al Bani. The magistrate recommended a guardianship over the person, finding "by clear and convincing evidence that Usamah Al Bani is an incompetent person due to the strokes he has suffered, his lack of insight and judgment, poor decision making, and mental illness."

{¶5} Al Bani filed objections to the magistrate's decision. The trial court overruled his objections, adopted the magistrate's decision, and appointed Heinzerling guardian over the person of Al Bani. Al Bani now appeals raising three assignments of error for our review. For ease of the analysis, we rearrange and consolidate some assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ERRED BY CONCLUDING THAT A MULTITUDE OF AILMENTS UNRELATED TO THE PROPOSED WARD'S COMPETENCE RENDERED THE WARD INCOMPETENT.

Assignment of Error Number Three

THE TRIAL COURT ERRED BY CONSIDERING THE PROPOSED WARD'S CHARACTER TRAITS AS EVIDENCE OF INCOMPETENCE.

**{¶6}** We address Al Bani's first and third assignments of error together because both challenge the relevance of information that the probate court considered in determining that he was incompetent.

**{¶7}** "The purpose of guardianship hearings is to gather information in order to determine the best interests of the prospective ward." *In re Guardianship & Conservatorship of Stancin*, 10th Dist. Franklin No. 02AP-637, 2003-Ohio-1106, ¶ 12. "The process to appoint a guardian is not adversarial in nature." *In re Guardianship of Berkes*, 9th Dist. Summit No. 19225, 1999 WL 193882, *3 (Mar. 31, 1999). The probate court has broad discretion in matters involving the appointment of a guardian. *In re Guardianship of Slone*, 3d Dist. Crawford No. 3-04-13, 2004-Ohio-6041, ¶ 7.

**{¶8}** Al Bani first argues that "[n]one of [his physical ailments] are relevant to the issue of his competence." Under the guardianship statutes, "[i]ncompetent" is defined as "any person who is so mentally impaired as a result of a mental or *physical* illness or disability * * * that the person is incapable of taking proper care of the person's self * * *." (Emphasis added). R.C. 2111.01(D). Thus, to the extent that a physical illness or disability causes a mental impairment, that physical ailment is relevant in determining whether the individual is incompetent.

**{¶9}** In overruling Al Bani's objections[1] to the magistrate's decision, the probate court aptly noted, "[w]hile physical impairment alone is not sufficient for a declaration of incompetency, it is relevant to the proposed ward's incompetency when considered as a source

---

[1] We note that Al Bani's brief to this Court is virtually identical to his objections to the magistrate's decision.

of mental impairment." Dr. Pool opined in his expert evaluation that Al Bani's stroke was one cause of his mental impairment. Al Bani acknowledges that "[m]any of [his] ailments are related to [his] stroke." While Al Bani's other physical ailments were mentioned by the probate court, a review of its decision reveals that Al Bani's "stroke and stroke related medical traits" were the only physical ailments considered in its determination that he was incompetent.

{¶10} Because the statute defining incompetence specifies that a mental impairment can be the "result of mental or *physical* illness or disability" and Dr. Pool opined that Al Bani's stroke caused his mental impairment, the trial court did not err in considering this in its determination that he was incompetent. (Emphasis added.) R.C. 2111.01(D). Moreover, given that Al Bani concedes that his mental illnesses could be considered by the trial court, he has not demonstrated any prejudice.

{¶11} Al Bani also argues that the following items were irrelevant and should not have been considered by the probate court: (1) that he cussed at a resident, (2) that he threw a ball at a resident, (3) that he threatened to break the plexiglass to a fire extinguisher, and (4) that he has no remorse or regret for his actions. These specific incidents occurred within a month and a half of the magistrate's hearing.

{¶12} Dottie Pastis, the social worker at Wayside Farm who oversaw Al Bani's anger management classes, testified regarding his behavior there. Pastis testified that Al Bani stated that "he was going to break the plexiglass from the fire extinguisher and make a weapon out of it" on September 20. She also noted that, on October 1, he swore at someone who was lighting his cigarette. Then, on October 23, "he threw a ball and hit another resident in the back as he was walking away from him." Pastis further testified that Al Bani stated he had no remorse for his actions. The application for the appointment of a guardian was heard on October 30, 2013.

**{¶13}** Under the facts of this case, we cannot say that the probate court abused its discretion in considering Al Bani's recent behavior when deciding whether he was incompetent.

**{¶14}** Al Bani's first and third assignments of error are overruled.

<u>Assignment of Error Number Two</u>

THE TRIAL COURT ERRED BY FAILING TO ADEQUATELY WEIGH THE EVIDENCE THAT THE PROPOSED WARD IS COMPETENT AND CAPABLE OF INDEPENDENT LIVING.

**{¶15}** Under his second assignment of error, Al Bani argues the probate court "fail[ed] to place sufficient weight on [his] evidence that he is capable of sound decision making and independent living." We disagree.

**{¶16}** A probate court's decision to appoint a guardian will not be reversed absent an abuse of discretion. *In re Guardianship of Borland*, 5th Dist. Stark No. 2002CA00410, 2003-Ohio-6870, ¶ 8. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "A reviewing court will not reverse a judgment appointing a guardian as an abuse of discretion if it is supported by competent, credible evidence." *In re Guardianship of Waller*, 1st Dist. Hamilton No. C-100131, 2011-Ohio-313, ¶ 16.

**{¶17}** Dr. Pool, a licensed physician, opined that Al Bani was mentally impaired and "not capable of taking proper care of himself or his property." Dr. Pool noted that Al Bani was homeless and had no support system of family or friends. Dr. Pool further noted that Al Bani's "story changes with the telling." Dr. Pool noted that, while at Wayside, Al Bani had thrown chairs and a urinal and had threatened to kill an aide. Dr. Pool opined that Al Bani had a "diminished capacity for appropriate decision-making and judgment." Dr. Pool further opined

that the proposed guardianship should be granted and concluded, "[w]ithout a guardian, Mr. Al Bani will return to the revolving door care that has limited his recovery."

{¶18} The probate court investigator also reported that Al Bani had a history of putting himself at risk due to poor judgment and decision making. During her interview of Al Bani, she noted impairments in concentration, comprehension, and judgment. In regards to activities of daily living, she indicated that he was incapable of dressing, transferring from bed, toileting, bathing, shopping, driving, and taking his medications. She noted there were indicators of self-neglect, that his family was estranged and living out of state, that he was noncompliant with his medications and had a history of leaving facilities against medical advice. The court investigator recommended that a guardianship was necessary over the person of Al Bani.

{¶19} Pastis, a social worker, chronicled Al Bani's history leading up to his admission at Wayside Farm and his behavior there. She testified that, following his most recent stroke, Al Bani went against medical advice and left multiple medical facilities and that he remained noncompliant with his medications. She noted that he has no family support and had lost his apartment that he had been sharing with a 21-year-old woman. Pastis indicated that this woman had access to his bank card and withdrew all of his funds from his account. Upon his admission to Wayside Farm, a large machete knife was found in his belongings. In addition, during his stay, he had thrown various items at staff members and residents, and remarked that "there are plenty of things in this facility that you can make a weapon out of." Pastis testified that Al Bani was attending anger management classes and, although he now behaved appropriately with her, some of his statements concerned her. While Pastis was testifying regarding Al Bani's anger management classes, he interrupted her to state that the answers he gives are "[t]extbook." Pastis explained that "[e]ven though he knows what to say in anger management, it's doing him no

good." Pastis further testified that Al Bani has mental health diagnoses, but he refuses to admit that he has them. Pastis voiced concerns regarding Al Bani's strokes, homelessness, leaving medical facilities against medical advice, and being vulnerable to being taken advantage of in the community.

{¶20} Charity Spade, a restorative nurse, testified that Al Bani spends the majority of his time in a wheelchair and is an "extensive assist" for activities of daily living. Spade reported that, although Al Bani could not walk without the assistance of others, he had requested a walker. She testified that he was a "very, very high fall risk." She indicated that he often goes backwards in his wheelchair because it is easier, but he does not appreciate the safety risk this poses and that he had run into her before. Spade also testified that it was recommended that Al Bani take a "swallowing test" because he was coughing on his pills and food. Al Bani refused the test, and as a result, the home thickens his liquids and placed him on a mechanically soft diet. Nurse Spade opined that Al Bani could not currently live in the community physically. She further opined that "[m]entally he does not make [] sound decisions."

{¶21} According to Al Bani, he refused to take the swallow test because he read an article in *Prevention* magazine criticizing it and that the radiation places the body in danger. Al Bani affirmed that it was not an emotional decision. He did not offer any explanation for his decisions to leave the various medical facilities against medical advice or his noncompliance with his medications. Regarding his various behaviors, Al Bani claimed to have no idea where the machete knife came from and that he was provoked before he threw things. For instance, he testified that he threw a full urinal because an aide was not responding promptly to him. While he admitted to being "vindictive," he believed he had positive behaviors since being released from prison. In addition, he averred it was "pure speculation" that anyone had taken advantage

of him. Al Bani testified, "[s]ince [his] release from prison [he] maintained three residence[s], held a job, paid [his] bills, fed [him]self, and done anything [he] had to do since 2011. Just since April [he'd] not been able to do that."

**{¶22}** In deciding a guardianship was necessary, the probate court noted Al Bani's prior "living capabilities * * * are not relevant to his present day condition." A person's previous ability to take proper care of himself or his property does not automatically lead to the conclusion that he is currently able to do so. The guardianship statutes provide for the fluid nature of one's mental status, for example, by allowing for the review and termination of a guardianship. *See* R.C. 2111.47. In a guardianship hearing, the issue is whether the individual is "presently incompetent and in need of a guardian." *In re Guardianship of Thomas*, 148 Ohio App.3d 11, 20 (10th Dist.2002).

**{¶23}** Based on the evidence in the record, we cannot say that the trial court abused its discretion in determining that, at the time of the hearing, Al Bani was unable to properly care for himself due to his mental impairment, and was, therefore, in need of a guardian.

**{¶24}** Al Bani's second assignment of error is overruled.

### III

**{¶25}** Al Bani's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JOSEPH A. KACYON, Attorney at Law, for Appellant.

BARBARA HEINZERLING, Attorney at Law, Appellee.