[Cite as *In re Guardianship of Sauber*, 2017-Ohio-1317.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

IN THE MATTER OF THE
GUARDIANSHIP OF:                        CASE NO. 13-16-37

    THOMAS SAUBER

                              O P I N I O N

[THOMAS SAUBER - APPELLANT]

IN THE MATTER OF THE
GUARDIANSHIP OF:                        CASE NO. 13-16-38

    THOMAS SAUBER

                              O P I N I O N

[THOMAS SAUBER - APPELLANT]

Appeals from Seneca County Common Pleas Court
Probate Division
Trial Court Nos. 20162020 and 20162023

Judgments Affirmed

Date of Decision: April 10, 2017

APPEARANCES:

    *James W. Fruth* for Appellant

    *Randall C. Schwartz* for Appellee

    *Lisa A. Miller* for Appellee, GAL

**SHAW, J.**

{¶1} Thomas Sauber ("Sauber") brings these appeals from the December 9, 2016, judgments of the Seneca County Common Pleas Court, Probate Division, finding that Thomas was an incompetent person pursuant to R.C. 2111.01(D).  On appeal, Sauber argues that the trial court's determination that he was incompetent was against the manifest weight of the evidence.

*Facts and Procedural History*

{¶2} On August 9, 2016, Patricia Sauber, Sauber's wife of over 48 years, filed an "Application for Appointment of Guardian of Alleged Incompetent," seeking to have Sauber declared incompetent on the basis of "dementia" and "senility."[1]  (Doc. No. 1).  Patricia sought to be the guardian of Sauber's person and his estate.  At the time that Patricia filed her application, Sauber was 86 years old and was living in St. Catherine's nursing home in Fostoria.  Patricia, who was 80 years old, still resided in her home in Fostoria.

{¶3} Along with her application, Patricia filed a "Statement of Expert Evaluation" from Roy Harvey, M.D.  According to Harvey's evaluation, Harvey had been Sauber's doctor for 10 years.  Harvey indicated that Sauber had dementia, which was progressing, that Sauber usually did not recognize his children, that Sauber could not dress himself, and that Sauber had become more hostile to others

---

[1] Patricia's application was assigned as trial court case number 20162020, which corresponds to appellate case 13-16-37.

over time. Harvey's evaluation indicated that Sauber needed help to walk, but he could feed himself. Harvey indicated that he noticed impairment of Sauber's orientation, his motor behavior, his thought processes, his "affect," his memory, his concentration and comprehension, and his judgment. (Doc. No. 4).

{¶4} Harvey stated that Sauber was "terribly senile" and that he would continue to get worse. (Doc. No. 4). Harvey specifically stated that Sauber "has deteriorated more each year with respect to memory, behavior, and judgment. He gave money away to whomever would ask him for it, instead of paying bills. He now does not even recognize a son who used to be his favorite. He has become more oppositional and aggressive." (*Id.*) Ultimately, Harvey opined that a guardianship should be established.

{¶5} The trial court ordered an investigation into the matter and also appointed a Guardian ad Litem for Sauber. The trial court's investigator first met with Sauber on August 26, 2016. The investigator indicated that Sauber did not want a guardian and that he did not want his wife to be his guardian because she kept all his money. Sauber further told the investigator that he did not want his daughter to be his guardian. After the interview, the investigator opined that a guardianship was necessary and that there were no less restrictive measures in this matter.

{¶6} On September 26, 2016, a hearing was held wherein many of Sauber's family members were present. At the hearing, Sauber's counsel stated that he wanted an independent medical evaluation. Before the hearing concluded, the court indicated to the family members present that if anyone else desired to be considered as guardian, they would have to file to do so.

{¶7} On October 4, 2016, Judith Hartley, one of Sauber's children, filed an application to be appointed as guardian of Sauber, the alleged incompetent.[2]

{¶8} On November 17, 2016, the court investigator met with Sauber a second time. During the second meeting Sauber again asserted that he did not want a guardian at all and that he did not want his daughter to be his guardian. This time, however, Sauber indicated that if he had to have a guardian he wanted his wife Patricia to be his guardian. Sauber told the investigator that Patricia had spoken with him about the matter. The investigator still recommended that a guardianship was necessary.

{¶9} On November 19, 2016, the independent medical evaluation of Sauber was completed by Jeremy J. Mashburn, D.O. Mashburn's report stated that he spent approximately 60 minutes on the "initial evaluation." (Doc. No. 74). As for Mashburn's findings, Mashburn indicated that Sauber had "mild vascular dementia," that Sauber had impairment with his orientation, his motor behavior, and

---

[2] Judith's application was assigned a separate case number in the trial court, specifically 20162023, which corresponds to appellate case 13-16-38.

his memory, but Mashburn did not detect other issues such as with Sauber's speech and thought processes. Mashburn also indicated that he felt Sauber had intact short and long term memory. (*Id.*) Mashburn did note that Sauber was unsteady when standing and ambulating.

{¶10} Mashburn concluded that he believed the guardianship should be denied as Sauber was capable of caring for the activities of daily living with the assistance of the nursing staff at St. Catherine's. Mashburn opined that Sauber was capable of making decisions regarding his medical treatments, his diet, his finances, and his property.

{¶11} On November 30, 2016, a hearing was held on the applications for guardianship. At the hearing, Sauber and his wife Patricia each gave testimony related specifically to Sauber's alleged incompetence pursuant to R.C. 2111.01(D). After hearing testimony on this issue, and considering the medical records, the trial court found Sauber incompetent. The trial court then heard testimony from Patricia, Judith Hartley, and the GAL regarding who should be named as Sauber's guardian. Thereafter, the trial court designated Judith, Sauber's daughter, as his guardian.

{¶12} On December 9, 2016, the trial court filed its final judgment entries on the matter declaring Sauber incompetent and noting that Judith had been appointed as guardian for Sauber. As Judith's application was granted, Patricia's was denied.

It is from the judgment declaring Sauber incompetent that he appeals, asserting the following assignment of error for our review.

**Assignment of Error**
**The Seneca County Probate Court's decision to declare appellant incompetent and to appoint a Guardian for appellant was contrary to the manifest weight of the evidence.**

{¶13} In his assignment of error, Sauber argues that the trial court's determination that he was incompetent pursuant to R.C. 2111.01(D) was against the manifest weight of the evidence. Specifically, he contends that he demonstrated at the final hearing that he was able to answer specific questions posed to him, that there was no indication he had done anything reckless, particularly with regard to his finances, and that he was able to feed himself. Sauber also argues that a guardianship was not the least restrictive method available.[3]

{¶14} "In a guardianship hearing, the issue is whether the individual is 'presently incompetent and in need of a guardian.'" *In re Al Bani,* 9th Dist. Summit No. 27348, 2014–Ohio–5783, ¶ 22, quoting *In re Guardianship of Thomas,* 148 Ohio App.3d 11, 20 (10th Dist.2002). The definition of incompetent for purposes of guardianship includes, "any person who is so mentally impaired as a result of mental or physical illness or disability * * * that the person is incapable of taking proper care of the person's self or property * * *." R.C. 2111.01(D).

---

[3] Sauber only challenges the trial court's competency determination on appeal. He does not challenge the trial court's decision designating his daughter as guardian rather than Patricia. Similarly, Patricia did not appeal the trial court's determination. Therefore, we have not considered the issue and will not address it.

{¶15} Incompetency must be established by "clear and convincing evidence." R.C. 2111.02(C)(3). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954). When reviewing an issue that required proof by clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id*. at 477.

{¶16} In determining whether the trial court's determination was against the manifest weight of the evidence, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that its decision must be reversed and a new hearing ordered. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, ¶ 20. In doing so, we accord deference to the trial court's decision because the trial court had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections, which cannot be conveyed through the written record. *In re S.G.*, 3d Dist. Defiance No. 4-16-13, 2016-Ohio-8403, ¶ 67, citing *In re S.D.,* 5th Dist. Stark

No. 2016CA00124, 2016–Ohio–7057, ¶ 20, citing *Miller v. Miller,* 37 Ohio St.3d 71 (1988).

{¶17} At the final hearing in this case, Sauber testified regarding his own competency. In his testimony he knew his name, where he was at, and the month. He did not know his lawyer's name, or the name of the judge. He could vaguely describe the President of the United States' appearance, but could not name him. He could not name where he lived, stating that he thought it was "St. Jennifer" in Fostoria. (November 30, 2016, Tr. at 14). He did not know all the medications he was taking or all of his illnesses. Sauber also did not recall having his evaluation done by Dr. Harvey. He did recognize his wife and his daughter but he could not name all of his children. In addition, he did not remember the mother of one of his children, Mark.

{¶18} Patricia Sauber testified that she was concerned with Sauber's health changes. She testified that he kept getting confused and was doing a lot of falling. She testified that Sauber was not capable of caring for himself and that he did not care for himself in the nursing home. She testified that Sauber "sunsets" and has moments where he's "not really altogether there." (*Id.* at 27).

{¶19} At the conclusion of the testimony related to incompetency, the trial court took note of the evaluations filed by Dr. Harvey and Dr. Mashburn. The evaluation of Dr. Harvey, which was described previously, indicated that Sauber did

need a guardian, that he had dementia, that he had been declining and would continue to do so. While Dr. Mashburn opined otherwise, Dr. Harvey had been working with Sauber for a decade and was thus far more familiar with his declining condition. Moreover, though Sauber argues that he was able to answer some questions at the final hearing capably, there were others that he could not, which were specifically noted by the trial court in its entry on the matter. All these reasons support the trial court's judgment.

{¶20} Furthermore, although Sauber argues that there could have been a less restrictive alternative to a guardianship, the trial court found otherwise and it is supported in that it appeared in the record that Sauber essentially already did not handle his own finances and his primary care seemed to be handled by St. Catherine's.

{¶21} Based on the evaluation of Dr. Harvey, the testimony at the hearing, and the trial court's ability to observe Sauber in the courtroom and his responses to specific questions, we cannot find that the trial court's determination is against the weight of the evidence.[4] Therefore, Sauber sole assignment of error is overruled.

---

[4] In the GAL's brief to this court, she indicates that Sauber was unaware that he had urinated on himself during the final hearing and that during the lunch break he had to be taken to change his clothing. While the trial court may potentially have been aware of this, it is actually not contained anywhere in the record and thus we will not consider it.

*Conclusion*

**{¶22}** For the foregoing reasons, Sauber's assignment of error is overruled and the judgments of the Seneca County Common Pleas Court, Probate Division, are affirmed.

***Judgments Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**