[Cite as *In re Guardianship of Hoffman*, 2017-Ohio-8023.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY


IN RE:                                                    CASE NO. 9-17-06

THE GUARDIANSHIP OF:
                                                          **O P I N I O N**
ELIZABETH H. HOFFMAN


Appeal from Marion County Common Pleas Court
Probate Division
Trial Court No. 16-GDN-032

Judgment Affirmed

Date of Decision:  October 2, 2017


APPEARANCES:

  *Todd A. Workman* for Appellant

  *M. Elizabeth Martindell* for Appellee

**WILLAMOWSKI, J.**

{**¶1**} Respondent-appellant Elizabeth H. Hoffman ("Hoffman") appeals the judgment of the Probate Division of the Marion County Court of Common Pleas that granted an emergency guardianship over her and named M. Elizabeth Martindell as guardian. For the reasons set forth below, the judgment of the lower court is affirmed.

*Facts and Procedural History*

{**¶2**} In the summer of 2016, Hoffman fell inside her home and was unable to get up. January 18 Hearing Tr. 12. She laid in her house for several days after this fall until she was discovered. November 18 Hearing Tr. at 10. On July 28, 2016, she went to the intensive care unit at the hospital. After she received treatment for her injuries, Hoffman was admitted to the Kindred Nursing Home and Rehabilitation Community ("Kindred") for recovery on August 9, 2016. *Id.* On November 15, 2016, the attorney for Kindred submitted an application for the appointment of an emergency guardian for the estate and person of Hoffman at the Probate Division of the Marion County Court of Common Pleas. Doc. 1. An expert evaluation of Hoffman's condition was affixed to this application. Docs. 4, 5. On November 16, 2016, the trial court found that a guardianship of the person of Hoffman was appropriate and appointed M. Elizabeth Martindell ("Martindell") as emergency guardian. Doc. 5. The trial court then ordered a hearing on this matter be held on November 18, 2016. *Id.*

{¶3} At the hearing on November 18, 2016, Melissa Scott ("Scott"), the director of nursing at the Kindred facility where Hoffman was recovering, testified about Hoffman's mental and physical condition. November 18 Hearing Tr. 3. In her testimony, Scott stated that the staff at Kindred was concerned about Hoffman's safety if a guardian was not appointed. *Id.* Scott testified that Hoffman did not have running water at her home for roughly a year as of October 2016, her utilities had been shut off, and she had become a hoarder, having no clear pathways through her house. *Id.* at 3, 5. Scott explained that Kindred had attempted to rectify the issues with the utility company by setting up an arrangement with Hoffman's bank, but Hoffman believed that her bank was embezzling money from her account and refused to use online bill paying. *Id.* at 5. Scott also testified that Hoffman's condition had improved since her admission to Kindred. *Id.* at 7. She stated that Hoffman was not always cooperative, refusing to comply with the nursing home staff and believing that the protein shakes she was being served were "poison." *Id.*

{¶4} Hoffman was also at this hearing. *Id.* at 6. While Scott was testifying, Hoffman interrupted her and challenged her testimony. *Id.* During this outburst, the trial judge informed Hoffman that her attorney was her advocate and would speak for her during cross examination. *Id.* at 6-7. At this point, Hoffman indicated that she was not aware that her attorney represented her, saying that she believed the attorney next to her was the representative of her doctor. *Id.*

Hoffman then testified, saying she did not need a guardian. *Id*. at 9. During her testimony, she claimed that the nursing home was giving her a medication she was allergic to, asserted that her bank was embezzling money from her, and refused to say where she was going when she left Kindred because she was being "harassed" by the nursing home staff. *Id*. at 11-12, 13, 16. After hearing Hoffman's testimony, the trial court extended the emergency guardianship for another thirty days. *Id*. at 21.

{¶5} On December 15, 2016, the trial court extended the guardianship until January 18, 2017 and set another hearing date on the guardianship. Docs. 26, 28. At the hearing on January 18, 2017, Scott again testified about Hoffman's mental and physical condition. January 18 Hearing Tr. at 6. Scott described Hoffman as a difficult patient who refused to take her medication at times, yelled at the nursing home staff, and was often confused about her meal schedule. *Id*. at 7-8. Scott said that Hoffman often called 9-1-1 and reported on the nursing home staff. *Id*. at 10. However, on the morning of the hearing, Hoffman fell while getting off the bus, and the bus driver said their transportation service would no longer be able to pick up Hoffman because of her physical condition. *Id*. at 11. Scott testified that the nursing home regimen appeared to have been helping Hoffman and that she had concerns about Hoffman's ability to care for herself if she was released from Kindred. *Id*. at 6, 8. During Scott's testimony, Hoffman interrupted the examination and called Scott a liar. *Id*. at 7.

{¶6} Hoffman then testified. *Id*. at 20. In her testimony, Hoffman refused to give her date of birth for the record, would not tell the court about her plans if the guardianship were terminated, and admitted that she had brain damage from an accident. *Id*. at 20, 25, 29. At the conclusion of her testimony, Hoffman stated that she "[did] not want the d*** Court to harass [her] anymore" and accused the nursing home of "kidnapping" her. *Id*. at 29. The court then ordered a guardianship, appointing Martindell as guardian. Doc. 53. In its judgment entry, the trial court relied upon the evaluation of Dr. Parminder Singh in which Hoffman was diagnosed as having a mental illness and the evaluation of Dr. Timothy Spare in which Hoffman's mental and physical condition was discussed in detail. *Id*.

## *Assignment of Error*

{¶7} Hoffman filed notice of appeal on March 7, 2017. Doc. 59. On appeal, Hoffman raises one assignment of error, which reads as follows:

> **The trial court erred to the prejudice of the Appellant when it granted petitioners' motion for guardianship absent clear and convincing evidence and such determination was against the manifest weight of the evidence.**

In her brief, Hoffman argues that the trial court erred by making a determination against the manifest weight of the evidence. In particular, appellant argues that the information at the hearing did not address the present condition of Hoffman

but addressed her past condition. On the basis of these arguments, Hoffman requests that this Court reverse the trial court's award of guardianship.

*Legal Standard*

**{¶8}** "In a guardianship hearing, the issue is whether the individual is 'presently incompetent and in need of a guardian.'" *Matter of Guardianship of Sauber*, 3d Dist. Seneca Nos. 13-16-37 and 13-16-38, 2017-Ohio-1317, ¶ 14, quoting *In re Al Bani*, 9th Dist. Summit No. 27348, 2014-Ohio-5783, ¶ 22, quoting *In re Guardianship of Thomas*, 148 Ohio App.3d 11, 20, 771 N.E.2d 882, 889 (10th Dist.2002). Under R.C. 2111.01(D)(1), an incompetent person is

> **Any person who is so mentally impaired, as a result of a mental or physical illness or disability, as a result of intellectual disability, or as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property or fails to provide for the person's family or other persons for whom the person is charged by law to provide.**

R.C. 2111.01(D)(1).

**{¶9}** Incompetency must be established by clear and convincing evidence before a guardian may be appointed by the trial court. R.C. 2111.02(C)(3). Clear and convincing evidence is "proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Keith*, 3d Dist. Crawford No. 13-17-01, 2017-Ohio-5488, ¶ 26, quoting

*Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. On review of a guardianship, an appellate court "will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Sauber* at ¶ 15, citing *Cross.*

{¶10} "The trial court is granted broad discretion in matters involving the appointment of a guardian for one alleged to be incompetent." *In re Guardianship of Miller*, 187 Ohio App.3d 445, 2010-Ohio-2159, 932 N.E.2d 420, ¶ 3, citing *In re Guardianship of Slone*, 3d Dist. Crawford No. 3-04-13, 2004-Ohio-6041.

> **In determining whether a trial court's decision to appoint a guardian is against the manifest weight of the evidence, a court of appeals must be guided by the presumption that the findings of the trier of fact were correct. The rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Therefore, a judgment supported by competent, credible evidence, going to all the essential elements of the case, will not be reversed as being against the manifest weight of the evidence.**

(Citations omitted.) *Slone* at ¶ 9, citing *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273, 1276-1278 (1984).

*Legal Analysis*

{¶11} In this case, the record contains ample evidence to support a finding that Hoffman is incompetent to take care of herself and is in need of a guardian. First, the trial court reviewed two medical evaluations. Doc. 53. The first

evaluation diagnosed Hoffman with schizophrenia/schizoaffective disorder. *Id*. The doctor stated that Hoffman was mentally ill and needed to take certain medications to treat this condition. *Id*. This evaluation concluded that Hoffman was impaired as to her comprehension and judgment. *Id*. A second evaluation by a psychiatrist stated that Hoffman was suffering from obsessive compulsive disorder and paranoia. *Id*. This report expressed concern that Hoffman's living conditions at home were a danger to her health and that she was unaware of her physical condition or her health needs. *Id*. Both reports concluded that Hoffman was in need of a guardianship as she was not capable of providing for her own health and safety. *Id*.

{¶12} Second, the behavior of Hoffman at the hearings on November 18, 2016, and January 18, 2016, suggests the need for a guardian. At multiple junctures, Hoffman interrupted Scott while she was testifying and exhibited a confused, combative behavior. Hoffman was unsure as to who her attorney represented, claimed the bank was embezzling funds, and accused the nursing home and the court of being complicit in kidnapping her. When asked, Hoffman could not demonstrate that she could care for herself, refusing to state where she planned on staying if she was released from the guardianship. During her testimony, Hoffman also admitted that she had brain damage, that she was in poor physical condition at the time of her fall in the summer, and that her time in the nursing home had been beneficial to her health.

{¶13} Third, Scott's testimony discussed Hoffman's behavior, her medical condition, and the care the nursing home was providing to Hoffman. Scott's testimony established that Hoffman was in need of the regimen that the nursing home could provide. Scott explained that Hoffman did not have water at her home, did not have utility service at her house, and was a hoarder who did not have clear pathways through her house. She also described the incident that led to Hoffman's stay at the nursing home, saying that Hoffman had fallen, could not get up, and was discovered several days later with serious injuries. At the nursing home, Hoffman had fallen four or five times with injury and was no longer able to use the bus service she relied upon for transportation as the result of a fall. Scott described Hoffman's combative behavior, which involved refusal to take medication and insults directed at the staff. The regimen also appeared to be helpful to Hoffman as her wounds had healed. Apparently, Hoffman was not able to remember whether she had eaten her meals or taken her medication without the help of the nursing home staff.

{¶14} We do not find evidence in the record that would suggest that the trial court abused its discretion in ordering a guardianship for Hoffman. While Hoffman asserts that the guardianship was awarded in response to her past physical condition rather than her present physical condition, we find ample evidence in the record that addresses her present physical and mental condition. Scott testified as to Hoffman's ongoing care at the nursing home and Hoffman's

recent behavior in response to the nursing home staff. Scott's testimony even included a discussion of a fall that Hoffman had the morning of the trial. Further, the trial court was able to observe Hoffman's present physical and mental condition as she testified on her own behalf before the trial court. After reviewing the record, we find that the trial court, in reaching its decision, relied upon some competent credible evidence. Thus, we do not find that the trial court's judgment was rendered against the manifest weight of the evidence. For these reasons, Hoffman's sole assignment of error is overruled.

*Conclusion*

{¶15} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Probate Division of the Marion County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/hls**